**VAN CUREN v RYBAK et**

Ohio Appeals, 9th Dist, Summit Co.

No. 2872. Decided Oct. 11, 1937

Schnee & Belden, Akron, for. appellant.

Charles J. Smith, and H. A. Sullivan, Akron, for appellee Emily Rybak.

## OPINION

By WASHBURN, J.

This cause is before this court on an appeal on questions of law and fact.

Lucretia Van Curen (who will hereinafter be referred to as the owner of the dominant estate) sued Emily Rybak (who will hereinafter be referred to as the owner of the servient estate), and others who are not here involved, seeking to quiet her title to a spring upon said servient estate and her right to pipe the water from the same to the highway separating said estates, and to use the water from said spring for domestic and farm purposes in and about the buildings located upon said dominate estate.

More than fifty years ago certain large tiles were placed in said spring and covered over, and a pipe was connected therewith and laid underground on the servient estate to and under the highway and on the premises of the dominant estate to the buildings thereon, and ever since said time, until just before the bringing of this suit, the owners and occupiers of the dominant estate used the water from said spring for the purposes hereinbefore set forth —said spring being their only source of water supply; and during all of said time no owner or occupier of the servient estate in any manner objected to said use by the owners and occupiers of the dominant estate until on or about the 12th day of November, 1935, when the owner of the servient estate obstructed the natural flow of water from said spring, and claimed to own said spring and to be exclusively entitled to the water therefrom.

Some time in or about the year 1884 the occupier of the servient estate, in plowing and tilling the same, broke in the covering of said spring, thereby causing the water to be roily and unfit for the purposes for which it had been used.

Promptly thereafter the occupier of the dominent estate, without asking permission but without objection, entered upon the servient estate and repaired and restored said spring, and the use of the water therefrom, for the purposes hereinbefore set forth, continued until the same was obstructed by the owner of the servient estate in 1935, as hereinbefore set forth.

A certain affidavit by the owner of the dominant estate at the time said use of said spring was begun was attempted to be introduced in evidence in the court below by the counsel for the owner of the servient estate, but said counsel properly admit in this court that the same is not competent and consent that the same be not considered, and with that eliminated there is no evidence as to the circumstances under which the use of said spring by the dominant estate was begun.

If, in the beginning, said use was by positive as distinguished from negative permission and has always remained so, then the use was not adverse and under a claim of right, and the owner of the dominant estate would acquire no easement right by prescription. But, as has been said, there is no evidence that the use of said spring in its inception was permissive in that sense, and

there is evidence in the record not only of fifty years of continuous and exclusive use, but also there is evidence tending to prove that such use for more than 21 years before 1935 was adverse and under a claim of right rather than by positive permission.

The incident hereinbefore referred to of the accidental breaking in of the spring by the occupiers of the servient estate more than 21 years previous to 1935, before any controversy arose as to the rights of the parties in reference thereto, and what took place at that time, tends strongly to establish that said use, for at least 21 years and possibly for all the years, was not permissive, but was adverse and under a claim of right.

The maintenance of the spring and the use of the water without asking leave and without objection for the period of 50 years, in the absence of evidence as to how it began, is presumed to have been in pursuance of a grant and is evidence of a claim of right, and the burden of showing the contrary is upon the owner of the servient estate.

See **Pavey v Vance et, 56 Oh St 162.**

One other fact perhaps should be mentioned: which is that during all of said time said use was exclusive, and no owner or occupier of the servient estate made or attempted to make any use of the water from said spring.

It should also be observed that the dominant estate was owned by one owner only, for a period of more than 40 years of the time referred to, during which the use of the spring as hereinbefore set forth continued. In view of that fact, it is not important that the present owner of the dominant estate and her immediate predecessor in title used the spring for only a short time.

Whatever the law may be in other states, it is settled in Ohio that privity that will permit the taking of possession of a claimed easement or right in adjoining lands, exists between a vendor and a vendee, even though the

deed makes no mention of such possession or any right to such easement. This court so decided on June 30, 1924, in the case of **Hachtel v Pride et,** wherein one of counsel for the appellee in the instant case was one of counsel for the defendants; and the Supreme Court has since so held in the case of **Zipf v Dalgran, 114 Oh St 291.** And that proposition is especially so if, at the time the deed is made, the grantor had a right to such easement by prescription based upon his own personal adverse possession for more than 21 years.

The facts, as shown by the evidence, that the present owner of the dominant estate knew at the time she acquired title that the present owner of the servient estate claimed to be the owner of the spring and to have the right to prevent the use thereof by the owner of the dominant estate, and that the owner of the dominant estate offered to purchase from the owner of the servient estate the right to use said spring, while admissible, are not persuasive when the whole record in this case is considered.

At the time of such negotiations, the title by adverse possession of successive owners and occupiers of the dominant estate for the statutory period had become perfect before the present owner acquired title. Under such circumstances, such negotiations, instead of being an admission of the nonexistence of any fact necessary to the establishment of a title by prescription, are more in the nature of an effort to buy peace, or, in other words, save the hazard and expense of a lawsuit.

Upon the record in this case we find that for more than 21 years said use was adverse and under a claim of right, and was with the knowledge and acquiescence of the owners and occupiers of the servient estate, and was continuous and uninterrupted; and as a conclusion of law we find that the owner of the dominant estate has acquired a right or easement by prescription in the servient estate to maintain said spring as it is now main-

tained, and to pipe the water from same to the dominant estate and use it as it is now being used.

A decree may be rendered accordingly, and enjoining the owner of the servient estate from interference with the exercise of such right or easement.

STEVENS, PJ. & DOYLE, J., concur.